IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES J. DALEY, | Case No. 3:13-cv-00861-PK |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

PAPAK, Magistrate Judge:

James Daley ("plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision should be reversed and this case should be remanded for the payment of benefits.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On July 30, 2008, plaintiff protectively applied for DIB and SSI. Tr. 71, 213-20. After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 71, 113-30, 133-56. On July 27, 2010, an ALJ hearing was held. Tr. 71, 159. On December 10, 2010, the ALJ issued a decision finding plaintiff disabled for the closed period of March 17, 2008, through July 27, 2010, but thereafter medically improved. Tr. 21, 71-83. On December 12, 2011, the Appeals Council accepted review and remanded the case for further proceedings "[f]or the period beginning July 28, 2010." Tr. 21, 91-93. On September 6, 2012, a second administrative hearing was held, at which plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 38-62. On September 28, 2012, the ALJ issued another unfavorable decision finding plaintiff not disabled as of July 28, 2010. Tr. 21-31. After the Appeals Council declined jurisdiction over the ALJ's 2012 decision, plaintiff filed a complaint in this Court. Tr. 1-5.

## FACTUAL BACKGROUND

Born on June 7, 1966, plaintiff was 41 years old on the alleged onset date of disability and 46 years old at the time of the 2012 hearing. Tr. 56, 213. Plaintiff obtained a GED and, in 1991, received vocational training at the Concord Career Institute. Tr. 253. He worked previously as a computer repairer. Tr. 56, 249. Plaintiff alleges disability beginning March 17, 2008, due to spinal stenosis, sciatic nerve issues, and coronary artery disease, which result in constant pain, reduced functioning, and depression. Tr. 213, 287, 299.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards

and the findings are supported by substantial evidence of record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a medically determinable severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either

Page 3 - FINDINGS AND RECOMMENDATION

singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 28, 2010. Tr. 25. At step two, the ALJ determined that plaintiff has the severe impairments of cervical spine degenerative disc disease and lumbar spine degenerative disc disease. Tr. 26. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of a listed impairment. Tr. 25.

Because he did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work after July 27, 2010. The ALJ resolved that plaintiff has the residual functional capacity ("RFC") to: "lift and carry 25 pounds frequently and 50 pounds occasionally," and sit, stand, and walk six hours out of an eight hour workday, but with

the "option to sit or stand at will." Tr. 27. In addition, the ALJ found that plaintiff "is limited to frequent reaching up to shoulder level" and "no overhead reaching" with "the dominant upper extremity." *Id.*

At step four, the ALJ determined that plaintiff could perform his past relevant work as a computer repairer. Tr. 30. In the alternative, the ALJ found, at step five, that plaintiff could perform a significant number of jobs existing in the national and local economy despite his impairments, such as furniture rental clerk, counter clerk, and greeter. Tr. 31. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act after July 27, 2010. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding him not credible; (2) rejecting the lay testimony of Elaine Colette McGann; and (3) improperly weighing the opinions of Safina Koreishi, M.D., and Sherman Lawton, M.D.

I.  Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom statements concerning the extent and severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of symptoms, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

Page 5 - FINDINGS AND RECOMMENDATION

1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that he is primarily disabled due to chronic pain relating to his degenerative disc disease. Tr. 52. Due to the severity of this pain, plaintiff explained that he reclines "three-quarters of [the] day" and can only be up and active for "15, 20 minutes" at a time. Tr. 51. Plaintiff also endorsed weakness and numbness in his lower extremities, such that he needed a cane or a shopping cart to lean on in order to ambulate for extended periods. Tr. 50-52. However, due to reduced grip strength in both hands, he testified that he had difficulty holding onto his cane and had repeatedly "dropp[ed] things." *Id.* When asked to describe a typical day, plaintiff remarked that he "tr[ies] to do light housework" and then "lay[s] down on the couch." Tr. 51.

After summarizing his hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible due to his failure to seek treatment and the lack of corroborating medical evidence. Tr. 28.

Specifically, the ALJ found that plaintiff's history of "minimal treatment" after July 27, 2010, "undermine[d] his allegations of debilitating pain." Tr. 28. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's credibility. *Burch*, 400 F.3d at 681. Nevertheless, before drawing a negative inference, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical

visits." SSR 96-7p, *available at* 1996 WL 374186.

The record before the Court does not support the ALJ's conclusion regarding this issue. Plaintiff underwent back surgery in 2006. Tr. 336. He subsequently received regular medical treatment from multiple providers for his unresolved back pain. *See, e.g.*, Tr. 323-25, 360-64, 419-49, 468-97, 592-99, 601-13, 654-58, 670-85; *see also* Tr. 460-62 (examining doctor William Carr, M.D., summarizing plaintiff's medical history through July 2008). However, in August 2010, he relocated from Oregon to Oklahoma to be closer to his wife's family, resulting in the termination of his relationship with then-treating physician Dr. Koreishi; he moved back to Oregon in September 2011. Tr. 46, 61, 654. Through "going to Oklahoma and then moving back, [plaintiff] lost his medical coverage twice, so he's had a hard time getting his care established." Tr. 48; *see also* Tr. 44 (plaintiff filed for bankruptcy in 2009). Nevertheless, by the time of the 2012 hearing, plaintiff had successfully applied for and obtained coverage under the Oregon Health Plan, and reinitiated medical treatment. Tr. 52, 62. This evidence accounts for plaintiff's irregular medical visits during the relevant time period.

Moreover, even assuming that plaintiff had sufficient financial resources to afford medical care, few treatment options remained. The ALJ characterized plaintiff's back impairment as "mild" or "moderate" based on imaging studies from 2009.[1] Tr. 27 (citing Tr. 593-94). Yet more recent imaging studies, from October 2012, reveal that the condition of plaintiff's lumbar and cervical spine had deteriorated to the point of being "moderately severe."[2] Tr. 707, 711-12; *see also* Tr. 464-66 (Dr.

---

[1] This was the only medical evidence, outside of Dr. Lawton's report, the ALJ relied on in finding that the record failed to support plaintiff's subjective symptom testimony. Tr. 27-28.

[2] Medical records from October 2012, including plaintiff's MRI, appear to have been first submitted to the Appeals Council; the ALJ therefore may not have had access thereto at the time

Page 7 - FINDINGS AND RECOMMENDATION

Carr describing plaintiff's back impairment in October 2008 as "progressive degenerative disc disease," such that "[his] prognosis is rather guarded . . . [i]t appears that he is entering the phase of 'chronic pain management'"). Regardless, plaintiff was not a surgical candidate due to "t[o]o much scar tissue." Tr. 466, 652, 709. He had also previously tried epidural injections, physical therapy, counseling, chiropractics, and massage therapy, none of which provided significant pain relief. *See, e.g.*, Tr. 431, 437, 702. Further, while he expressed interest in aquatherapy and acupuncture, plaintiff is limited by his finances, as well as his inability to be active for prolonged periods due to pain. Tr. 51, 431, 703; *see also* Tr. 696 (examining doctor Eugen Ivan, M.D., noting in May 2011 that plaintiff's "exercise tolerance [during a cardiology consultation was] limited due to severe back problems"). Finally, narcotic pain medication is no longer a treatment option due to plaintiff's history of attempted suicide and the fact that he previously struggled with dependency on these drugs. Tr. 46, 577, 703, 707. As such, given the record before it, the Court cannot conceive of what other modalities of treatment would be available to plaintiff and no such options have been recommended or prescribed by his recent medical providers. *See* Tr. 702-03, 707-15. Therefore, the ALJ's reliance on plaintiff's failure to seek treatment after July 2010 was misplaced.

Additionally, the ALJ found that plaintiff lacked credibility because his hearing testimony regarding his "difficulties with hand use" and "inability to walk more than a couple of minutes" were contradicted by Dr. Lawton's November 2011 medical assessment. Tr. 28. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's

---

of his decision. Tr. 5. Regardless, this Court is required to consider new evidence submitted to the Appeals Council in evaluating whether the ALJ erred in denying benefits. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012).

Page 8 - FINDINGS AND RECOMMENDATION

pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As discussed in greater detail below, Dr. Lawton was retained to perform a nerve conduction study to assess whether the weakness and pain in plaintiff's hands and wrists was attributable to carpal tunnel syndrome. Tr. 659-60. He did not review any of plaintiff's medical records and performed only a cursory medical evaluation. *Id.* Indeed, Dr. Lawton recognized that a medical opinion regarding plaintiff's back condition would require him to "view any medical material that might be made available, particularly MRI scans of the lumbar spine." Tr. 660. As such, Dr. Lawton's functional assessment was based primarily on the results of a nerve conduction study, which was normal and not indicative of significant impairment. In other words, Dr. Lawton's opinion about plaintiff's lack of carpal tunnel syndrome was not probative as to the severity and extent of plaintiff's back impairment and the pain associated therewith. Accordingly, the ALJ's reliance on Dr. Lawton's report to find plaintiff not fully credible was equally unwarranted.

Thus, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. Because this error was prejudicial to plaintiff and therefore not harmless, the ALJ's credibility finding should be reversed.

II.  Lay Testimony

Plaintiff next argues that the ALJ neglected to furnish a germane reason for rejecting the testimony of his mother, Ms. McGann. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). In order to discredit such testimony, the ALJ must provide "reasons germane to each witness." *Id.* (citation and internal quotation omitted).

Page 9 - FINDINGS AND RECOMMENDATION

In August 2008, Ms. McGann completed a Third-Party Adult Function Report. Tr. 263-70. Ms. McGann testified that plaintiff engaged in limited cooking, shopping, and home maintenance because he "can't stand long enough to do anything now" and it "hurts to bend and pull." Tr. 263-66. She also stated that plaintiff experienced problems with personal care and seemed more stressed. Tr. 264. Further, Ms. McGann remarked that plaintiff ceased engaging in hobbies, other than watching television, and socialization "because of pain." Tr. 267. Essentially, she described plaintiff as "a shell of [his] former [self]." Tr. 270.

The ALJ found that "[t]he allegations of Ms. McGann are generally credible observations of [plaintiff's] functioning at the time of her August 2008 report but are of little assistance in assessing his functional limitations during the relevant period from July 2010 to present." Tr. 28. The ALJ concluded that "[i]n light of [plaintiff's] lack of ongoing problems with coronary artery disease, the lack of findings of carpal tunnel syndrome on nerve conduction studies, the minimal treatment for back pain, and the lack of treatment for mental symptoms during the relevant time period, there is not sufficient support to find that the [limitations identified by Ms. McGann] have continued to the degree described." *Id.*

Ordinarily, "opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Further, where the claimant's testimony is properly disregarded, "the ALJ need only point to those reasons when rejecting similar testimony by [the lay witness.]" *Molina*, 674 F.3d at 1114 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

Here, plaintiff's back pain has not improved and his underlying condition is, in fact, worsening. *Compare* Tr. 593-94 (imaging study from 2009), *with* Tr. 711-12 (imaging study from

Page 10 - FINDINGS AND RECOMMENDATION

2012); *see also* Tr. 464-66, 652, 707. The fact that Ms. McGann's third-party statements were rendered prior to July 28, 2010, is therefore not dispositive in this case. To the extent Ms. McGann's testimony was rejected on the same basis as plaintiff's, the ALJ's decision is not supported by substantial evidence. Initially, Ms. McGann's lay opinion was based on plaintiff's back impairment and his corresponding pain and depression. *See generally* Tr. 263-70. The fact that plaintiff did not suffer from carpal tunnel syndrome, as confirmed by Dr. Lawton in November 2010, or coronary artery disease is immaterial to Ms. McGann's report.

As discussed in section I, it was improper for the ALJ to discredit plaintiff's back pain testimony premised on his failure to seek treatment. The record also demonstrates that plaintiff's depression was mostly attributable to his back pain. *See* Tr. 654, 709-10; *see also* Tr. 702 (Teresa Everson, M.D., reporting in February 2012 that "[c]ounseling did not seem to help" plaintiff's back pain). Thus, plaintiff does not allege disability based solely on any mental impairment and his treating providers generally described his depression as "slight" during the relevant time period. Tr. 287, 299, 654-55. As such, mental health treatment would be of little value unless and until plaintiff's back impairment resolved, such that it was improper to disregard Ms. McGann's lay statements on this basis. Because the ALJ neglected to furnish a germane reason to discredit the lay testimony, the ALJ's decision regarding this issue should be reversed .

III.  Medical Opinion Evidence

Plaintiff also contends that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discrediting the opinions of Drs. Koreishi and Lawton. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of

Page 11 - FINDINGS AND RECOMMENDATION

a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

A.   Dr. Koreishi's Opinion

In December 2009, plaintiff initiated care with Dr. Koreishi primarily for treatment of his back pain. Tr. 611-12. Plaintiff saw Dr. Koreishi approximately once per month until relocating to Oklahoma in August 2010. Tr. 601-14, 654-58, 669-85. Dr. Koreishi's chart notes reflect plaintiff's subjective pain complaints and the doctor's objective examination findings; they also indicate that the doctor reviewed imaging studies relating to plaintiff's back. *Id.*

In July 2010, Dr. Koreishi completed a Physical Capacity Statement. Tr. 649-52. She listed plaintiff's diagnoses as "herniated disc[,] severe back pain," and carpal tunnel syndrome. Tr. 649. The doctor opined, in pertinent part, that plaintiff should avoid tasks that required "lifting objects [or] fine motor skills," could stand or walk for less than two hours in an eight-hour workday, would miss more than two days of work per month, and needed the option to elevate his lower extremities and shift positions at will. Tr. 649-50, 652. She also endorsed a number of postural and manipulative limitations. Tr. 651. Dr. Koreishi explained that her assessment was based on the fact that plaintiff was "not a surgical candidate," had "already had surgery," and was "still in extreme pain." Tr. 651-52. She listed plaintiff's prognosis as "poor" and concluded that she did "not think he is able to work" even a low stress job. *Id.*

The ALJ afforded Dr. Koreishi's opinion "little weight" because "[sh]e provides no findings to support the described limitations." Tr. 29. Namely, the ALJ noted that: (1) plaintiff "takes Aleve

but is prescribed no other pain medications and is undergoing no other treatment for pain"; (2) Dr. Koreishi "diagnosed carpal tunnel syndrome but nerve conduction studies did not show evidence of carpal tunnel syndrome"; and (3) "[t]he only examination findings noted in [Dr. Koreishi's] July 2010 chart note were that [plaintiff] was is no acute distress, exhibited [a] normal gait, and was slightly depressed." *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citation omitted).

Substantial evidence does not support the ALJ's assessment of Dr. Koreishi's opinion in this case. As discussed above, the evidence of record reveals that plaintiff did seek treatment for his back pain after July 27, 2010, and, to the extent that such care was less frequent, it was due to plaintiff's limited resources and the fact that he had previously tried nearly every available treatment option. The Court also finds that the ALJ's reliance on plaintiff's use of over-the-counter pain medications was imprudent. To allow an ALJ to penalize a claimant for ceasing his use of narcotic medications that are medically contraindicated due to a previous suicide attempt and history of dependency would both produce dangerous precedent and undermine certain facets of the Social Security system. As with Ms. McGann, the limitations assessed by Dr. Koreishi were primarily based on plaintiff's back impairment, which the objective medical evidence demonstrates was both chronic and worsening. *See, e.g.*, Tr. 652; *see also* Tr. 464-66, 707, 711-12. Regardless, on the date of discharge, Dr. Koreishi advised plaintiff to obtain a nerve conduction study, which was not completed until November 2010. Tr. 654, 659-60.

Furthermore, the fact that Dr. Koreishi's July 2010 chart note recorded plaintiff's normal gait, lack of acute distress, and slight depression does not undermine her conclusions regarding his

Page 13 - FINDINGS AND RECOMMENDATION

functioning, as these clinical findings do not translate to or otherwise indicate the ability to perform sustained work activity. This is especially true given that, in the same chart note, Dr. Koreishi documented plaintiff's continued reports of "significant" back and leg pain, and the fact that he had a "laminectomy in 2006, and is not a surgical candidate any more." Tr. 654. In other words, Dr. Koreishi's July 2010 chart note supports, rather than detracts, from her Physical Capacity Statement because it acknowledges plaintiff's treatment history, the objective medical evidence underlying that history, and plaintiff's ongoing disabling pain. In sum, contrary to the ALJ's assertion, the Court finds that Dr. Koreishi's report is consistent with her chart notes, as well as the objective and other evidence of record. *See Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) ("[i]f a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight . . . [however, in] many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight") (citation and internal quotations and brackets omitted). As such, the ALJ committed harmful legal error in rejecting Dr. Korieshi's opinion.

B.  Dr. Lawton's Opinion

As noted in section I, plaintiff attended a one-time evaluation with Dr. Lawton in November 2010. Tr. 659-60. Dr. Lawton did not review plaintiff's medical records and instead relied on the results of a nerve conduction study and cursory examination. *Id.* The latter consisted of taking plaintiff's pulse and listening to his heartbeat, testing plaintiff's nerve sensations, reflexes, and muscle strength, and examining plaintiff's head, ears, eyes, nose, and throat. *Id.* Based on this evidence, Dr. Lawton concluded that plaintiff suffered from "minimal peripheral polyneuropathy,"

as opposed to carpal tunnel syndrome. Tr. 662. He completed a corresponding functional assessment, in which he opined, in relevant part, that plaintiff was capable of: lifting and carrying up to 50 pounds continuously and up to 100 pounds occasionally; sitting for eight hours, standing for three hours, and walking for one without interruption; sitting for eight hours, standing for six hours, and walking for three hours total in an eight-hour workday; and never reaching with the left dominant hand and occasionally reaching with the right non-dominant hand. Tr. 663-68. Dr. Lawton also assessed several postural limitations. Tr. 666.

The ALJ gave "the opinion of Dr. Lawton . . . significant weight." Tr. 29. However, the ALJ rejected Dr. Lawton's lifting and carrying restrictions "in light of [plaintiff's] degenerative disc disease." *Id.* In addition, the ALJ disregarded Dr. Lawton's postural and reaching limitations because there was "no evidence to support [such] limitations." *Id.* As indicated above, an ALJ need not accept a medical opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citation omitted).

Contrary to the ALJ's assertion, Dr. Lawton's evaluation generated objective medical evidence regarding plaintiff's need for postural and reaching limitations. Notably, he performed a nerve conduction study, which revealed minimal neuropathy in plaintiff's wrists, and an examination, which divulged a lack of reflexes in plaintiff's arms and a "collapse of all major muscle groups" in plaintiff's left leg. Tr. 660. Moreover, Dr. Koreishi's opinion and the testimony of plaintiff and Ms. McGann, as well as the objective medical evidence, support the need for accommodation in these categories. Tr. 45-54, 263-70, 649-52, 707, 711-12; *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("a treating physician's opinion carries more weight than an examining physician's"). In fact, all of the opinion evidence of record, including that of the

Page 15 - FINDINGS AND RECOMMENDATION

state agency consulting sources, reflects that limitations beyond those identified in the ALJ's RFC were warranted prior to July 27, 2010, and the objective medical evidence shows that plaintiff suffers from a degenerative back condition that will continue to worsen over time. *See* Tr. 451-58, 464-66, 527, 652, 707, 711-12; *see also In re Marriage of Medlyn*, 192 Or.App. 89, 100, 83 P.3d 945, *rev. denied*, 337 Or. 160, 94 P.3d 876 (2004) ("[d]egenerative disease, by definition, progressively worsens over time"). Thus, the ALJ committed harmful legal error by rejecting Dr. Lawton's postural and reaching limitations. The ALJ's assessment of the medical opinion evidence should be reversed.

IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (citation omitted). The court may not award benefits "unless the claimant is, in fact, disabled." *Id.* at 1138. Pursuant to the credit-as-true doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

As addressed herein, the ALJ committed harmful legal error by discrediting the testimony of plaintiff and Ms. McGann, as well as the medical opinions of Drs. Koreishi and Lawton. It is clear from this evidence that plaintiff's back impairment renders him disabled. Additionally, the VE's testimony indicated that, if Dr. Koreishi's opinion was credited, plaintiff would be unable to perform his past relevant work or any other work as it exists in the national or local economy. Tr. 57-61. Moreover, the objective medical evidence demonstrates that plaintiff's condition will continue to deteriorate over time. *See, e.g.*, Tr. 464-66, 652, 707, 711-12. Thus, even assuming there were evidentiary deficiencies, further proceedings would likely add nothing to the record, especially in light of the fact that plaintiff's claim has been pending for over six years and was previously remanded. Therefore, evidence from plaintiff, Ms. McGann, and Dr. Koreishi should be credited as true and this case should be remanded for the immediate payment of benefits.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be REVERSED and this case REMANDED for the immediate payment of benefits. The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this Findings and Recommendation is filed. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 3rd day of October, 2014.

Paul Papak
United States Magistrate Judge