IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JAMES J. DALEY,**

      Plaintiff,

      v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

      Defendant.

Case No. 3:13-cv-00861-PK

**FINDINGS AND
RECOMMENDATION**

PAPAK, Magistrate Judge:

    This action was filed against defendant Carolyn W. Colvin, Commissioner of Social

Security, by plaintiff James J. Daley on May 22, 2013. Daley sought review of the

Commissioner's decision finding Daley disabled for the closed period of March 17, 2008,

through July 27, 2010, but thereafter medically improved and therefore not disabled for purposes

of entitlement to Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI"). On October 3, 2014, I recommended that the Commissioner's decision finding plaintiff

not disabled after July 27, 2010, be reversed and remanded for the immediate payment of benefits. On October 28, 2014, Judge Simon adopted my recommendation. On December 3, 2014, Daley moved for an award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA"), and on December 15, 2014, Judge Simon entered an award of attorney fees in Daley's favor in the amount of $4,331.81.

Now before the court is Daley's motion (# 30) for approval of payment to his counsel of additional attorney fees out of Daley's retroactive benefits award, pursuant to 42 U.S.C. § 406(b). I have considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Daley's motion should be granted, subject to the adjustments discussed herein. Payment to Daley's counsel of $12,642.01 out of Daley's past-due benefits award should be approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Daley moves for approval of payment of attorney fees to his counsel in an amount less than 25% of his retroactive DIB and SSI award, less the $4,331.81 that his counsel has already received pursuant to the EAJA and less an additional $5,917.00 received by his counsel pursuant to 42 U.S.C. § 406(a) for legal services provided in connection with administrative proceedings before the SSA. Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . .

Page 2 - FINDINGS AND RECOMMENDATION

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must be approved by the court following analysis of its reasonableness before it may be paid. *See* 42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801–802. Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved." *Id.* at 808. The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the

court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.*, citing *Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (en banc).

The Ninth Circuit addressed the *Gisbrecht* reasonableness analysis in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc). The *Crawford* court reviewed the consolidated appeals of three different actions in which district courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant Clara Crawford was represented by attorney Brian Shapiro. *See Crawford*, 586 F.3d at 1144. The Administration initially denied Crawford's application for benefits, but following litigation, ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee, Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits, representing an amount 3.55 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that Shapiro's lodestar calculations were correct. *See id.* However, the district court found that Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants (as opposed to data regarding the success rate of Social Security claimants generally) and because Crawford's attorneys' skill and experience were already reflected in the lodestar figure. *See id.* The court

ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration initially denied Washington's application for benefits, but following litigation, awarded $76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only $11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146. However, as for Crawford, the district court found that Cho had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants, because Washington's attorneys' skill and experience were already reflected in the lodestar figure, and because Cho had not been required to do much work to obtain benefits on Washington's behalf. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases,

the Administration initially denied Trejo's application for benefits, but following litigation,

awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had

entered into a contingency fee agreement that provided for a 25% contingency fee, Haley

requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an

amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The

district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement,

that Haley had caused no unnecessary delay and that her representation had been excellent, and

that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time

and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See

id.* However, as for Crawford and Washington, the district court found that Haley had not met

her burden to show that the requested fee was reasonable, because she had not presented

evidence of her own firm's success rate in representing Social Security claimants, because

Trejo's attorneys' skill and experience were already reflected in the lodestar figure, and because

Haley had not presented evidence that Haley's firm had been precluded from accepting other

work in consequence of Haley's representation of Trejo. *See id.* The court ruled, without

explanation, that a 100% "enhancement" over the lodestar figure was reasonable, and on that

basis awarded a fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See

id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly

beginning with the lodestar calculation and determining a reasonable fee award by applying

enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements

and applying any appropriate reductions to the calculated contingency fees to arrive at

reasonable fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of

substandard performance or dilatory conduct by the claimants' attorneys, and that the requested

fees were not "excessively large in relation to the benefits achieved." *See id.* at 1151. On the

basis of these findings, the *Crawford* majority found that the requested fees—each of which was

less than the fee provided for in the applicable contingency fee agreement—were reasonable in

each case, and therefore reversed each district court's decision with instructions to award the

requested fees. *See id.* at 1151–1152.

      As a separate and independently adequate ground for vacating the orders below, the

*Crawford* court further noted the district courts' failure to explain the bases for the percentages

they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at

1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure

to provide firm-specific historical success rates as a basis for reducing the requested fee awards,

and suggested that the reasonableness of a fee award could be measured in part by reference to

the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that

case. *See id.* at 1152–1153.

      As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Daley entered into a

contingency fee agreement with his counsel providing for payment of 25% of Daley's retroactive

benefits to his attorney in the event retroactive benefits were awarded following litigation in

federal court. In addition, the Administration initially approved Daley's application for DIB and

SSI for a closed period, only to award retroactive benefits after the closed period following

litigation. The exact amount of retroactive benefits that resulted from the litigation is in dispute.

Plaintiff argues the total amount of past-due benefits paid to him is in excess of $131,416.80,

Pl.'s Pet. 2–3, while defendant argues the amount is actually $75,489.80. Def.'s Resp. 4. Because the amount of attorney fees permitted under 406(b) is proportional to the retroactive benefits awarded, I must first determine that amount. I must then assess whether the amount plaintiff requests constitutes reasonable compensation for Daley's counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

### A.    Amount of Retroactive Benefits Awarded

The parties dispute whether to include the past-due benefits the ALJ initially awarded for the closed period between September 2008 and July 2010 ("closed period amount"), which includes benefits for August and September 2010, the two months following the end of the closed period. Pl.'s Pet., Attach. B, at 2. Plaintiff proposes adding the closed period amount, which he calculates as $36,220.00, to the amount counsel calculates Daley received for the period "from October 2010 forward and from August 2007 to September 2008," $95,196.80, for a total amount of retroactive benefits awarded of $131,416.80. Plaintiff would then deduct the fees awarded pursuant to 42 U.S.C. § 406(a) from the 406(b) award presently under consideration. Defendant, in turn, proposes excluding the closed period amount. Defendant argues the total is limited to the amount of past-due benefits Daley received from August 2010 through September 2014, or $75,489.80. Defendant would not deduct the 406(a) fees plaintiff's counsel was awarded from 406(b) award.

First, it is unclear whether the closed period amount should be included as retroactive benefits awarded. Section 406(b)(1) permits the court to allow as part of its judgment a reasonable fee for representation before the court "not in excess of 25 percent of the total of the past due benefits to which the claimant is entitled *by reason of such judgment*." (Emphasis

added.) The closed period amount was awarded to plaintiff by the ALJ and thus not by reason of

a judgment of the court. Findings & Recommendation 2, Oct. 3, 2014, ECF No. 24. In addition,

plaintiff states in his motion that the amount counsel received pursuant to 406(a) was $5,917.00,

yet plaintiff does not provide any proof of that amount, and none appears on the record. As a

result, I decline to include the closed period amount as retroactive benefits awarded for purposes

of calculating the 406(b) fees. Consequently, I also do not deduct the 406(a) award from the

406(b) one.

The parties also disagree on the benefit amount apart from the closed period. Plaintiff

argues this amount totals $95,196.80, but does not break down how he arrived at that total. Pl.'s

Pet. 2. Defendant argues it is $75,489.80 based on the monthly rates for the period between

August 2010 and September 2014. Def.'s Resp. 4.

Neither calculation is correct. Based on the F&R adopted by Judge Simon on October 28,

2014, plaintiff was awarded past-due benefits for a period beginning in October 2010, the month

benefits from the closed period ended, and ending in September 2014, the month immediately

preceding the month the judicial determination was made. *See* Pl.'s Pet., Attach. B, at 2 ("Since

benefits are paid for the month disability ended and the following two months, your benefits

ended 10/2010."); 20 C.F.R. § 404.1703 (emphasis added) ("Past-due benefits means the total

amount of benefits under title II of the Act that has accumulated to all beneficiaries because of a

favorable administrative or judicial determination or decision, *up to but not including the month*

*the determination or decision is made*."). Thus the actual amount of past-due benefits plaintiff

/ / /

/ / /

Page 9 - FINDINGS AND RECOMMENDATION

received is $72,573.20.[1]

Plaintiff alternatively argues the total amount of retroactive benefits awarded includes those benefits awarded to plaintiff's wife and child because of plaintiff's disability. Plaintiff does not, however, provide the Court with enough information to determine the amount of those benefits because he does not provide the amount previously paid for SSI benefits on plaintiff's wife and child's behalf, which must be deducted from their award. Therefore for purposes of this fee petition the total amount of retroactive benefits awarded to plaintiff is $72,573.20.

## B.    Character of the Representation

### 1.    Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, the evidentiary record does not suggest that Daley's counsel's performance was in any way substandard. No reduction in the Section 406(b) fee is warranted due to the character of the representation here.

### 2.    Dilatoriness

A Section 406(b) award may properly be reduced if any delay in proceedings is properly attributable to the claimant's counsel. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, counsel sought three extensions of time to file his opening brief, totaling 67 days,

---

[1]

| Dates | # of Months | Rate | Sub-Total |
|---|---|---|---|
| October 2010 – November 2011 | 14 | $1,458.30 | $20,416.20 |
| December 2011 – November 2012 | 12 | $1,510.70 | $18,128.40 |
| December 2012 – November 2013 | 12 | $1,536.30 | $18,435.60 |
| December 2013 – September 2014 | 10 | $1,559.30 | $15,593.00 |
| | | GRAND TOTAL | $72,573.20 |

and two more extensions of time to file his reply brief, totaling 17 days. The delay caused by counsel added three months of past-due benefits at $1,559.30 per month. Counsel's 25% portion of these additional benefits amounts to $1,169.48. Thus, a $1,169.48 reduction in the Section 406(b) fee is warranted on the basis of dilatory performance.

### B.    Proportionality of Benefits Awarded to Attorney Time Spent

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

Daley provides documentary evidence of his counsel's time expenditures in this case, totaling 95.85 hours of attorney time. However, because the closed period amount and 406(a) fees are excluded, the work performed before the ALJ's December 10, 2010, decision should also be excluded. Counsel's time expenditures, excluding those hours, thus totals 60.65 hours of attorney time.

To give effect to the contingency fee arrangement in place between Daley and his counsel would thus yield an effective hourly rate of $208.44 (25% of $72,573.20 is $18,143.30; $18,143.30 less $1,169.48 for dilatoriness and $4,331.81 for EAJA fees, is $12,642.01; the quotient of $12,642.01 and 60.65 hours is $208.44 per hour).

Page 11 - FINDINGS AND RECOMMENDATION

Daley advises the court that his counsel's normal hourly rate for non-contingent matters was between $325.00 and $350.00 per hour for work between 2010 and 2015. Moreover, I take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected. I further take judicial notice that the Oregon State Bar 2012 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2011. According to the 2012 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2011 was $300. After the ALJ's December 10, 2010, decision, Daley's counsel expended 0.8 hours in 2010, 2.7 hours in 2011, 13.1 hours in 2012, 5.5 hours in 2013, 31.8 hours in 2014, and 6.75 hours in 2015. Even without adjusting for inflation, and instead using $300 as the rate for benchmark comparison purposes as to all years in which attorney time was expended, the effective requested hourly rate of $208.44 is only 69.5% of the estimated reasonable hourly rate for non-contingent matters.

Because the effective requested hourly rate is significantly below the estimated reasonable hourly rate for non-contingent matters, the rate is presumptively reasonable and I need not analyze it in comparison to the pre-litigation risk assessment, as I normally would. I therefore conclude that compensation at an effective hourly rate of $208.44 does not constitute disproportionate compensation of Daley's counsel for the legal services provided in this action. Reduction is therefore not warranted in connection with the proportionality factor.

**C.    Appropriate Fee**

For the foregoing reasons, I find that the contingency fee agreement in place between Daley and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), but that those

Page 12 - FINDINGS AND RECOMMENDATION

reductions discussed above are warranted. Daley's motion for approval of Section 406(b) fees should therefore be granted, and the Commissioner should be ordered to deduct the total amount of $12,642.01 ($72,573.20 * 0.25–$1,169.48–$4,331.81) from the gross amount of Daley's retroactive benefits awards and remit that amount to Daley's counsel, as a reasonable attorney's fee.

## CONCLUSION

For the reasons set forth above, I recommend that Daley's motion (# 30) be granted, and that payment to Daley's counsel of $12,642.01 out of Daley's retroactive benefits awards be approved.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 15th day of May, 2015.

Paul Papak
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION